UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ERIC CISNEY, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | Case No.: 2:18-cv-01148-MHH |
| } | |
| **ROBERT GREY JOHNSON, JR.,** } | |
| } | |
| **Defendant.** } | |

**MEMORANDUM OPINION AND ORDER**

Mr. Johnson has asked the Court to reconsider several rulings related to the parties' motions for summary judgment. (Doc. 119; *see also* Docs. 105, 107, 118). Mr. Johnson would like the Court to limit the judgment regarding his legal right to file a lien for attorney fees to the State of Alabama; to hold that the Cisneys' voluntary dismissal of their amended complaint eliminated Kerri Cisney's claims for outrage and contractual interference; to "strike, amend, alter, or vacate the determination made regarding 'responsible parties' in the Contingency Fee Agreement;" and to "strike, amend, alter, or vacate the determination regarding choice of law issues related to the interpretation of the Contingency Fee Agreement." (Doc. 119, pp. 1-2). This order identifies the standard that the Court must use to examine these issues and then addresses the issues.

1

I.

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, when an action involves multiple claims or multiple parties, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). If a court does not certify a partial final judgment under Rule 54(b), "any order or other decision" which "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). In other words, "an interlocutory order is subject to reconsideration at any time prior to entry of final judgment," *Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1242 (11th Cir. 2011) (citing *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1231 (11th Cir. 2010)); a motion to revise an interlocutory order "is not subject to the limitations of Rule 59," *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) (quoting *Gallimore v. Mo. Pac. R.R. Co.*, 635 F.2d 1165, 1171 (5th Cir. Unit A. Feb. 1981)). The Eleventh Circuit reviews a district court's revision of an interlocutory order for abuse of discretion. *See Harper*, 592 F.3d at 1231-32 (citing *Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC*, 253 Fed. Appx. 861, 863 (11th Cir. 2007)); *see also Region*

*8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805-06 (11th Cir. 1993).

The Advisory Committee Notes to Rule 60 of the Federal Rules of Civil Procedure, the rule that governs relief from final orders and judgments, distinguishes the standard under Rule 60 from the standard under Rule 54(b): "The addition of the qualifying word 'final' emphasizes the character of the judgements, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." FED. R. CIV. P. 60 Advisory Committee Notes, 1946 Amendment, Subdivision (b); *see also Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 227 (5th Cir. 2020) ("Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.") (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)); *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) ("In contrast [to Rule 59(e)], Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'") (quoting *Greene v. Union Mut. Life. Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985)).

## II.

The Court considers Mr. Johnson's arguments in reverse order, beginning with his choice of law argument.

***Choice of Law***

In its summary judgment opinion, the Court applied Alabama's choice of law rules to identify the law governing interpretation and enforcement of the contingency fee agreement at issue because in a diversity action like this one, choice of law analysis begins with forum law. (Doc. 118, p. 12); *see also Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir. 1990) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). The Court explained that Alabama follows the *lex loci contractus* rule and stated:

> The contingency fee agreement between Mr. Johnson and Mr. Cisney does not contain a choice of law provision. (Doc. 110, pp. 9-12; Doc. 72). Mr. Cisney signed the contingency fee agreement—and, therefore, accepted Mr. Johnson's offer to represent him—in Huntsville, Alabama. (Doc. 110, p. 12; Doc. 112, p. 53, ¶ 7). At that point, all elements of a valid contract were satisfied, and the contract for representation was formed. Thus, Alabama law governs the interpretation of the contingency fee agreement.

(Doc. 118, p. 13) (internal footnote omitted); *see also Industrial Chemical & Fiberglass Corp. v. North River Ins. Co.*, 908 F.2d 825, 829 n.3 (11th Cir. 1990) ("Alabama's choice of law rule provides that the law of the state wherein the contract was executed shall govern interpretation of the contract."); *American Nonwovens, Inc. v. Non Wovens Engineering, S.R.L.*, 648 So. 2d 565, 567 (Ala. 1994) ("[T]he

choice of law rule followed by Alabama provides that the law of the state wherein the contract was executed governs questions regarding the validity and interpretation of the contract.").

Mr. Johnson contends that California law should govern the interpretation and enforcement of the contingency fee agreement because "[t]he parties agreed in this case that the [fee agreement] was a California contract, thereby eliminating any choice of law dispute before this Court regarding the interpretation of the [fee agreement]." (Doc. 119, p. 5). In its summary judgment opinion, the Court noted that "[i]n his interrogatory responses, Mr. Cisney describe[d] the contingency fee agreement as a California agreement." (Doc. 118, p. 13 n.3) (citing Doc. 112, p. 61, ¶ 5). In his discovery responses, Mr. Cisney also stated that he "never met with" Mr. Johnson, that the two men corresponded by telephone and by email, and that he signed the contingency fee agreement at his home in Huntsville, Alabama, where it appears Mr. Cisney received the proposed contract from Mr. Johnson by email. (Doc. 112, pp. 60-61; *see also* Doc. 112, p. 53, ¶ 7). Under Alabama's choice of law rules, Alabama law governs questions regarding the interpretation of the contract because Mr. Cisney accepted the agreement and executed it in Alabama. The Court does not know what Mr. Cisney meant when he described the fee agreement as a "California contract;" he could have meant that it was a contract that Mr. Johnson was to perform in California. This much is certain: the fee agreement between Mr.

Cisney and Mr. Johnson does not contain a choice of law provision. (*See* Doc. 118, p. 13 n.3). A party's post hoc description of the contract is not tantamount to a choice of law provision to which the parties agreed when they entered the contract.

Mr. Johnson also argues that, under Alabama choice of law rules, California substantive law applies because the contingency fee agreement is a unilateral contract which formed when Mr. Johnson, in California, "accepted the signed agreement and undertook to perform services on behalf of [Mr.] Cisney." (Doc. 119, pp. 5, 6). Mr. Johnson cites *SouthTrust Bank v. Williams*, 775 So. 2d 184 (Ala. 2000), (Doc. 119, p. 5) and *Shapiro*, (Doc. 119, p. 6), for this proposition. *Shapiro* is of little help because the Eleventh Circuit applied Florida's choice of law rules in that case to decide what law to apply to the interpretation of an insurance contract. *Shapiro*, 899 F.2d at 1117.

*Williams* does not help Mr. Johnson either. In *Williams*, the Alabama Supreme Court held that "[a]mendments to the conditions of unilateral-contract relationships with notice of the changed conditions are not inconsistent with the general law of contracts." *Williams*, 775 So. 2d at 190-91. The Court found that the defendants in *Williams* implicitly agreed to be bound by a unilateral revision to a contract because the defendants had notice of the revision and remained silent. *Williams*, 775 So. 2d at 191. Here, the contract that Mr. Johnson prepared identified California as the place of execution. (Doc. 110, p. 12). Mr. Cisney struck through

6

"California," initialed the revision, and identified "Huntsville, AL" as the place of execution. (Doc. 110, p. 12). Mr. Johnson did not change or supplement Mr. Cisney's revision. Therefore, like the defendants in *Williams*, Mr. Johnson "implicitly assented to be bound by" Mr. Cisney's revision, declaring Huntsville, Alabama as the place of execution. *Williams*, 775 So. 2d at 191.

The parties anticipated that Mr. Johnson's work on behalf of Mr. Cisney would require Mr. Johnson to provide services in California to pursue worker's compensation benefits from Mr. Cisney's former California employer and damages from the tortfeasor who caused the accident in California in which Mr. Cisney was injured. (Doc. 112, pp. 60, 61; *see also* Doc. 112, p. 54, ¶ 12). But under Alabama's choice of law rules, the locus of the services to be performed is not a factor in a choice of law analysis concerning contract interpretation; the law of the place where the contract was executed governs. Thus, the Court will not revise its opinion on this point; Alabama law governs contract interpretation in this case.[1]

---

[1] Mr. Johnson also argues that the Court's "determin[ation] that the [fee agreement] was formed in Alabama in spite of the parties' agreement that the [fee agreement] was a California contract" is an improper *sua sponte* determination. (Doc. 122, p. 5). However, the Cisneys "request[ed] a declaratory judgment holding that the lien asserted by Defendants is subject to Alabama law." (Doc. 1-1, p. 5). Both parties cross-moved for summary judgment on the Cisney's declaratory action. (Docs. 105, 107). Therefore, the choice of law issue was properly before the Court at the summary judgment stage.

### *"Responsible Parties" Determination*

"Mr. Johnson has asserted a right to a portion of the Metlife settlement fund under several theories, one of which is breach of the terms of his contingency fee agreement with Mr. Cisney." (Doc. 118, pp. 13-14). The contingency fee agreement provides, in relevant part:

> Attorney shall be compensated for his services by means of a Contingency Agreement, whereby he is to be paid Thirty-Three and One-Third Percent (33%) of the gross monies recovered by settlement, arbitration, or judgment in his representation of Client's claim against the responsible parties.

(Doc. 110, p. 9). The Court held that "under the plain and unambiguous language of the contingency fee agreement between Mr. Cisney and Mr. Johnson, Mr. Johnson is not entitled to a fee lien against the Cisneys' settlement with Metlife, and the Cisneys have no obligation to pay Mr. Johnson fees under the contingency fee contract between Mr. Cisney and Mr. Johnson" from the MetLife settlement. (Doc. 118, p. 15). In reaching that conclusion, the Court addressed the meaning of the term "responsible parties:"

> Though this provision does not specifically identify the responsible parties against whom (or which) Mr. Johnson would bring a claim on Mr. Cisney's behalf, the phrase "responsible parties" is not ambiguous. Nestor Rosales was the party who was responsible for Mr. Cisney's July 17, 2015 accident. Metlife may have had a contractual obligation to Mr. Cisney in the event of an accident with an uninsured motorist, but Metlife does not qualify as a party responsible for the collision in California in which Mr. Cisney was injured.

(Doc. 118, p. 15).

Mr. Johnson challenges the Court's holding, arguing that the term "responsible parties" includes Metlife. (Doc. 119, pp. 4-5). Mr. Johnson asserts:

> A claim for UIM benefits is a contractual claim that is included under the term "responsible party." The definition of a "responsible" party not only includes one who is legally liable or accountable, but also one having the ability or obligation to pay money owed. (*See* Black's Law Dictionary). In the context of contract law, the term "responsible party" applies to anyone who is contractually bound to perform a duty, including compensate a party for goods or services, perform an act, or discharge a debt. In the instant case, the CFA between the parties does not limit Johnson's representation of Eric Cisney to a tort action against the at-fault driver. Rather, the CFA authorizes Johnson to pursue any and all claims arising out of the subject accident against the responsible parties. Met, as the UIM carrier for Eric Cisney, is absolutely a responsible party under the language of the CFA. If it were not, then the Cisneys would not have been entitled to assert a claim for UIM benefits, as that right arose out of the underlying motor vehicle accident.

(Doc. 119, pp. 4-5). Notably, the only authority Mr. Johnson cites for his position is Black's Law Dictionary.

Mr. Johnson's argument suggests a latent ambiguity in the term "responsible parties" in the contingency fee agreement. "A latent ambiguity [] exists when the writing appears clear and unambiguous on its face, but there is some collateral matter which makes the meaning uncertain." *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020) (internal quotation marks and citations omitted). Here, the collateral matter would be the Black's Law Dictionary definition of the term "responsible parties." If the term "responsible parties" is ambiguous, then "the court should construe the word or phrase according to the meaning a person of ordinary

9

intelligence would reasonably give it." *Safeway Ins. Co. of Alabama, Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). In addition, when a court "determines that a latent ambiguity exists, the court may then consider and rely upon extrinsic evidence to determine the true intentions of the parties to the contract." *Dupree*, 308 So. 3d at 490.

Here, Mr. Cisney stated in discovery responses that he hired Mr. Johnson "to represent [him] for the workers comp and 3rd party tortfeasor matters." (Doc. 112, p. 60). Mr. Cisney also stated that he did not "contract[] with [Mr.] Johnson to represent [him] on a UIM claim in Alabama," (Doc. 112, p. 61), and that there was "No UIM in California," (Doc. 112, p. 54, ¶ 17). (*See also* Doc. 112, p. 55, ¶ 22).[2] Mr. Johnson has not placed evidence in the record to rebut Mr. Cisney's assertion that the parties intended the contingency fee agreement to cover only claims for workers compensation benefits and damages against the tortfeasor.

Additionally, "if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of *contra proferentem*, any ambiguity must be construed against the drafter of the contract." *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000). Here, Mr. Johnson prepared the contingency fee

---

[2] Similarly, in discovery responses, Ms. Cisney stated that she "never entered into a contract" with Mr. Johnson for representation, and any representation that Mr. Johnson provided with respect to UIM benefits "was without express or implied permission." (Doc. 112, p. 58, ¶¶ 5-7).

agreement. Therefore, under Alabama law, the Court must construe ambiguous terms in the agreement against Mr. Johnson.

As noted, Mr. Johnson cites only the Black's Law Dictionary's definition of "responsible" for the proposition that "'responsible' party not only includes one who is legally liable or accountable, but also one having the ability or obligation to pay money owed." (Doc. 119, p. 4). Black's Law Dictionary provides, in pertinent part:

> responsible *adj.* (17c) **1.** Morally or legally answerable for the discharge of a duty, trust, debt, service, or other obligation; specif., marked by accountability to some higher authority for the execution of certain duties <the CEO is responsible to the board>.

*Responsible*, BLACK'S LAW DICTIONARY (11th ed. 2019). But a court must "construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it," *see Herrera*, 912 So. 2d at 1143, not the technical definition from a legal dictionary. Thus, under Alabama's rules of contract interpretation, the term "responsible parties" does not include Metlife, the company that insured Mr. Cisney.[3]

---

[3] It appears that California's insurance code is consistent with this result. *See Scottsdale Indem. Co. v. Arnold*, 2004 WL 2809992, at **1-2 (Cal. Ct. App. 5th Dist. Dec. 7, 2004) (interpreting underinsured motorist provision concerning sums paid "by or for anyone who is legally responsible" to mean "the underinsured motorist or the employer through workers' compensation" where the employer is "'legally responsible' for [an employee's] work-related injuries") (citing CALIFORNIA INSURANCE CODE § 11580.2(p)(4)). The *Arnold* opinion is not published, so the Court does not rely on the opinion for a substantive holding in this case.

Accordingly, the Court enters judgment for the Cisneys on Mr. Johnson's claim for breach of contract.[4]

*Claims for Outrage and Contractual Interference*

In its summary judgment opinion, the Court did not address the Cisneys' outrage claim and Ms. Cisney's intentional interference with a business or contractual relationship claim because Mr. Johnson did not move for summary judgment on those claims. (Doc. 118, p. 10) (citing Doc. 47-2, pp. 8-9, ¶¶ 41-54). The two claims first appeared in the Cisneys' amended complaint. (Doc. 47-2, pp. 8-10). Less than two weeks after the Cisneys amended their complaint, they filed a motion to strike the amended pleading. (Doc. 55). Mr. Johnson contends that when the Cisneys moved to strike their amended complaint, the initial complaint again became the operative complaint in this action. According to Mr. Johnson, by moving

---

[4] Mr. Johnson argues that the Court's determination of the meaning of the term "responsible parties" is an improper *sua sponte* determination. (Doc. 122, p. 5). The Court disagrees. As part of their declaratory action, the Cisneys requested "a declaratory judgment holding that the lien asserted by Defendants . . . is unenforceable." (Doc. 1-1, p. 5). Both parties cross-moved for summary judgment on the Cisney's request for declaratory relief. (Docs. 105, 107). In support of his motion for summary judgment – and in arguing that he is entitled to the disputed Metlife funds – Mr. Johnson placed the contingency fee agreement in the record. (Doc. 110, pp. 9-12). To determine whether "the lien . . . is subject to Alabama law and is unenforceable," (Doc. 1-1, p. 5), the Court needed to determine whether the contingency fee agreement was enforceable against Mr. Cisney. And to determine whether the agreement was enforceable against Mr. Cisney, the Court needed to determine the meaning of the term "responsible parties." Therefore, the Court examined the meaning of the term "responsible parties" in the contingency fee agreement between Mr. Cisney and Mr. Johnson. Interpretation of that term was a question of law for the Court.

to strike their amended complaint, the Cisneys voluntarily dismissed all claims that did not appear in the initial complaint. (Doc. 119, pp. 3-4).

The Court's initial ruling regarding the Cisneys' amended complaint was complicated by the fact that, before they filed their motion to strike, the Cisneys moved to dismiss their claims against the new defendant who they named in their amended complaint, their attorney Jerry Blevins. (Doc. 51). In their motion to dismiss, the Cisneys recognized that if they maintained claims against Mr. Blevins in this action, they would divest the Court of subject matter jurisdiction because the parties no longer would be completely diverse. (Doc. 51, p. 1).

Because the Cisneys' motion to dismiss preceded their motion to strike, the Court resolved the motion to dismiss first. After dismissing the Cisneys' claims against Mr. Blevins and eliminating him as a defendant, the Court terminated the Cisneys' motion to strike their amended complaint as moot. (Doc. 70). Mr. Johnson contends that the Cisneys' motion to strike their amended complaint was self-executing, such that when the Cisneys filed the motion to strike, they eliminated their amended complaint from the record.

In support of his argument, Mr. Johnson relies on Federal Rule of Civil Procedure 41(a)(1)(A)(i), which states: "Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an

13

answer or a motion for summary judgment." FED. R. CIV. P. 41(a)(1)(A)(i). Rule 41(a)(1)(A)(i) does not govern the Cisneys' motion to strike because, by its terms, the rule applies to notices of dismissal, not motions to strike. The Cisneys strategically chose the vehicles they used to try to unravel the procedural tangle they created when they filed their amended complaint and attempted to add Mr. Blevins as a defendant. They did not file a Rule 41(a)(1)(A)(i) notice of voluntary dismissal. Had they done so, they would have dismissed their entire action, and the Cisneys stated affirmatively in their motion to dismiss their intent to maintain their claims against Mr. Johnson. (*See* Doc. 51, p. 1) ("Plaintiff does maintain all claims against the Defendant Robert Grey Johnson, Jr. as stated in the amended complaint."). *See PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1307 (11th Cir. 2016) ("The text is also clear in still another way: Rule 41 speaks of voluntary dismissal of an action, not a claim.") (internal quotation marks and citation omitted); *see also Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1264-65 (11th Cir. 2021) ("The Rule's text plainly grants a plaintiff the right to dismiss—without court order—'an action'" and the Eleventh Circuit "has made abundantly clear that a Rule 41(a)(1) voluntary dismissal disposes of the *entire* action, not just some of the plaintiff's claims.") (quoting FED. R. CIV. P. 41(a)(1)(A)) (emphasis in *Devine*).[5]

---

[5] Mr. Johnson correctly notes that the Court cited to Rule 41(a)(1)(A)(i) in its order granting the Cisneys' motion to dismiss Mr. Blevins as a defendant for lack of subject matter jurisdiction. (Doc.

Still, the Court erred when it found that dismissal of Mr. Blevins as a defendant mooted the Cisneys' motion to strike. The motion to strike is broader than the motion to dismiss. In the motion to strike, the Cisneys stated that they "filed an amended complaint . . . to join as a defendant Jerry M. Blevins;" that joinder of Mr. Blevins "is impermissible as the court lacks jurisdiction to join" him as a defendant; and that they requested "an Order striking the amended complaint filed on February 5, 2019." (Doc. 55, p. 1). Because the relief the Cisneys requested in their motion to strike is broader than the relief requested in their motion to dismiss, the Court should have considered the motions in tandem and eliminated the amended complaint entirely. In their response brief, the Cisneys do not argue that their claims for outrage and contractual interference should remain in the case. (Doc. 121). Therefore, the Court strikes the language from Doc. 70 deeming Doc. 55 moot and grants the Cisneys' motion to strike. The original complaint in this action, (Doc. 1-1), is the operative complaint.

### *Mr. Johnson's Right to Enforce an Attorney Lien*

In its memorandum opinion and order, the Court "declare[d] that Mr. Johnson may not enforce an attorney lien against the Metlife settlement fund." (Doc. 118, p.

---

70). The citation is incorrect; the Court should not have issued the order pursuant to Rule 41(a)(1)(A)(i).

16). Mr. Johnson asks the Court to amend its holding to state that Mr. Johnson may not enforce an attorney lien "in Alabama." (Doc. 119, p. 2).

The Court summarizes its holdings on this issue as follows: under Alabama law, in failing to pay Mr. Johnson a contingency fee for the UIM settlement that Mr. Johnson pursued in Alabama on behalf of Mr. Cisney, Mr. Cisney did not breach his contingency fee agreement with Mr. Johnson, so Mr. Johnson may not recover fees from Mr. Cisney under a breach of contract theory, and Mr. Johnson may not enforce an attorney lien against the Metlife settlement fund under Alabama's attorney lien statute, ALA. CODE § 34-3-61(b), or under the lien provision in the contingency fee agreement.

## III.

For the reasons discussed above, the Cisneys' outrage claim and Ms. Cisney's intentional interference with a business or contractual relationship claim are not viable claims, so the Court revises its summary judgment opinion in that respect. Otherwise, the Court does not revise its summary judgment opinion. The remaining claims in this case shall proceed to trial on November 14, 2022.

**DONE** and **ORDERED** this July 7, 2022.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE